# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| PATRICIA FREELAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:06-CV-284-TS |
| | ) | |
| DETECTIVE MICHAEL GURGEVICH | ) | |
| in his official capacity as a Merrillville | ) | |
| Police Officer; TOWN OF MERRILLVILLE; | ) | |
| RICHARD FIELDER, individually and in his | ) | |
| official capacity as Manager of Mercantile Bank; | ) | |
| and MERCANTILE COMMERCIAL BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On May 3, 2005, the manager of Mercantile Bank, Richard Fielder, reported to the

Merrillville Police Department that the Plaintiff, Patricia Freeland, had come into the bank the

previous afternoon and presented two checks to him that he concluded were counterfeit. The

police arrested the Plaintiff and the State of Indiana charged her with attempting to commit fraud

on a financial institution. The prosecutor later dismissed the charges. The Plaintiff initiated this

lawsuit against the Mercantile Commercial Bank, Richard Fielder, Detective Michael Gurgevich,

and the Town of Merrillville for slander, false imprisonment and arrest, malicious prosecution,

and tortious interference with business and contractual relationships. She further alleges that the

Town of Merrillville and Detective Gurgevich violated her constitutional rights and sues them

pursuant to 42 U.S.C. § 1983.

This matter is before the Court on a Motion for Summary Judgment [DE 22], filed by

Detective Gurgevich and the Town of Merrillville on January 15, 2008, and a Motion for

Summary Judgment filed by Fielder and Mercantile Bank [DE 28] on March 3, 2008.

## BACKGROUND

On August 2, 2006, the Plaintiff filed a Complaint in Lake County Superior Court against the Defendants "to recover for civil rights violations, slander, false imprisonment and false arrest; tortious interference with a business relationship and contractual relations; abuse of process; malicious prosecution and injuries sustained by Plaintiff as a result of false statements made by Defendants." (Compl. ¶ 6; DE 1.) The Plaintiff claims that Fielder maliciously made false statements to police, that Detective Gurgevich failed to adequately investigate the statements, and that Detective Gurgevich made a false statement in a probable cause affidavit. As a result of these wrongdoings, she was arrested, imprisoned, and charged with felony fraud on a financial institution despite the absence of probable cause. The Plaintiff claims that she suffered damages in the amount of $5 million.

On August 14, Defendants Gurgevich and the Town of Merrillville removed the cause to federal district court pursuant to 28 U.S.C. §§ 1441 & 1446. The Defendants stated that removal was appropriate because the Complaint asserted a claim pursuant to 42 U.S.C. § 1983, an action over which the district court had original jurisdiction. The Defendants noted that the unanimous consent of all Defendants to removal was not required because no other Defendant had appeared in the action as of the filing of the Notice. On August 15, Defendants Fielder and Mercantile Bank consented to removal.

All the Defendant answered the Complaint; the Town of Merrillville and Detective Gurgevich answering jointly, and Mercantile Bank and Fielder answering jointly. Upon the close of discovery, the Defendants filed Motions for Summary Judgment. Detective Gurgevich and the Town of Merrillville argue in their Motion that the existence of probable cause to arrest the

Plaintiff for attempted fraud on a financial institution has foreclosed any Fourth Amendment claim as well as her state law claim for false arrest. The Defendants present Detective Gurgevich's good faith belief in the existence of probable cause as an alternative basis for dismissal of the false arrest claim under state law. Additionally, and alternatively, they argue that the Plaintiff does not state a claim pursuant to 42 U.S.C. § 1983 against the Town or against Detective Gurgevich in his official capacity because the Plaintiff does not identify the express or implied policy or custom of the Town or the police department that led to the purported deprivation of her constitutional rights. With regard to the remaining state law claims, the Defendants argue that they are immune from liability under the Indiana Tort Claims Act.

On April 25, 2008, the Plaintiff responded to the Defendants' Motion for Summary Judgment. The Plaintiff argues that there is sufficient evidence to allow a reasonable jury to conclude that she was arrested without probable cause. The Plaintiff maintains that she did not have any intent to deposit the checks and therefore no intent to defraud the bank, and that the Defendants were aware of this missing element of the charged offense. She contends that this, along with the fact that she was charged with fraud for depositing a bad check in an unrelated incident a month earlier even though there was no offense report prepared for this check, demonstrates bad faith. The Plaintiff argues that the Defendants are not entitled to any immunity because they acted on the basis of information they knew to be false. The Plaintiff responds to the Defendants' arguments that § 1983 municipal liability requires an official policy or custom by pointing to a policy of the Merrillville Police Department that an individual who accuses someone of a crime does not have to provide a sworn statement. She also submits that the Defendants do not provide training regarding investigation of check fraud cases and do not

"review specific problems with officers during [performance] evaluations." (Pl. Resp. 13, DE 33.)

In reply, the Defendants maintain that they were entitled to rely on the bank officer's statements establishing probable cause, and that the Plaintiff has not identified a policy or custom that is unconstitutional or that caused the purported harm.

The Bank and Fielder also move for summary judgment on all the claims asserted against them in the Plaintiff's Complaint. They argue that the Plaintiff's state law claims are barred by Indiana's public interest privilege, which immunizes certain statements, including those made in the context of a report to law enforcement. They also point to the existence of probable cause in defense of the Plaintiff's claims, asserting that there was ample evidence of fraud to support Fielder's decision to contact the police. The Defendants also attack the tortious interference with business relationships claims on grounds, among others, that the Defendants were fully justified in their actions.

The Plaintiff argues that she has designated sufficient evidence to present to a jury the issue of whether the Defendants abused any qualified privilege. She also argues that there was no probable cause for her arrest and that the Defendants were acting out of retaliation for an earlier incident involving a bad check that she cashed as the victim of a widespread scam.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp*., 200 F.3d 485, 492 (7th Cir. 2000). The court must consider the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp*., 168 F.3d

998, 1009 (7th Cir. 1999); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

## STATEMENT OF FACTS

At about 3:15 in the afternoon of May 2, 2005, the Plaintiff went to her local branch of the Mercantile Commercial Bank, where she was a regular customer. The Plaintiff asked to meet with Fielder, who was the manager of the bank. She brought with her two checks that totalled more than $140,000. The Plaintiff was the payee on both checks. She explained to Fielder that she was the payee agent for a company, and she wanted Fielder to check on the validity of the checks before she deposited them. Because it was late in the afternoon, Fielder told the Plaintiff that he would like to keep the checks to continue looking into them, and that he would call her when he had any information.[1]

---

[1] Due to the large dollar amount of the checks, a teller would not have been able to accept them for deposit without getting a manager's approval. According to Fielder's deposition, the Plaintiff was in line with a teller and only came to his office after speaking with the teller. He told the Plaintiff that the checks would have to be verified, and she then asked him to do so, agreeing to come back the next day. (Fielder Dep. 67–68.) However, the version of facts most favorable to the Plaintiff is that she went to the bank and asked to meet with Fielder because she wanted a bank officer to check the status of the checks before she deposited them. She claims that the two checks were the first she received in her position as the payee agent for an overseas company, and that one of her job duties as payee agent was to accept payments from the overseas company's United States clients, deposit the checks, send the company its amount, and take her "commission." (Pl. Dep. 24–25.)

On May 3, the Plaintiff returned to the bank to see Fielder. While she was waiting for Fielder to return from lunch, Merrillville Police officers came and asked her to come to the police department to answer questions about the two checks that she brought to the bank. The Plaintiff complied and, later that same day, she was arrested for attempting to commit fraud on a financial institution.

Unknown to the Plaintiff, by May 3 Fielder had confirmed that the two checks were fraudulent. He learned from a representative in the loss prevention department of the issuing financial institutions for the smaller check that it was fraudulent and under investigation by the Secret Service.[2] A loss prevention officer from the issuing company of the $100,200 check told him that the check had actually been issued for $556.56. Upon learning that the checks were not genuine, Fielder called a dispatcher at the Merrillville Police Department asking that someone from the police department come to the bank to take a police report on fraudulent checks that he had in his possession. In answer to questions from the dispatcher, Fielder explained that a customer, Patricia Freeland, came to the bank the previous day to deposit the checks, but that he told her he first had to verify them.

In response to Fielder's call, a patrol officer came to the bank and completed a report using information he received from Fielder. The report contained specific identifying information for each check, as well as the information supporting that the checks were

---

[2] The Secret Service, in addition to protecting national leaders and visiting dignitaries, is responsible to "safeguard the nation's financial infrastructure and payment systems." *United States Secret Service Strategic Plan (FY 2008–FY2013)* Mission Statement, http://www.ustreas.gov/usss/mission.shtml, visited Sept. 22, 2008.

fraudulent. The officer reported (erroneously) that the Plaintiff had deposited both checks.[3] Fielder gave the originals of the two counterfeit checks to the officer.

Detective Gurgevich, who was assigned as the detective on the case, also came to the Mercantile Bank on May 3. He did not talk to Fielder because he was not at the bank. When Detective Gurgevich returned to the police department to begin his investigation, he reviewed the offense report and prepared to interview the Plaintiff, who was at the police station by this time. The Plaintiff refused to answer any questions without her attorney present. According to the Plaintiff's attorney, he spoke to Detective Gurgevich and requested that the Plaintiff "be released because she did not deposit the checks and there was no evidence that she intended to defraud the bank." (Aff. of Robert Lewis, ¶ 8; DE 35-22.) The Plaintiff was not released, but was arrested and detained at the Lake County Jail.

The following day, Detective Gurgevich learned from talking to Fielder that the Plaintiff did not actually deposit the checks as indicated in the offense report. He testified in his deposition that he learned that the Plaintiff attempted to deposit the checks, but that no deposit was completed. The statement that Detective Gurgevich took from Fielder on May 4 indicates that the Plaintiff came to the bank around 3:10 p.m. on May 2, 2005, and asked Fielder to look at the two checks to see if they were okay. (Gurgevich Dep. 38.) In his statement to Gurgevich, Fielder also brought up a third check. The Plaintiff had deposited a fraudulent check for almost $2,000 a month earlier, in April, and then received cash for it.

When Detective Gurgevich took Fielder's statement, he did not require Fielder to be

_____

[3] It is not clear how this mistake got into the report. The Plaintiff claims that Fielder maliciously provided a false statement to the police. There is no testimony from the officer who authored the report. Nor do the parties designate testimony from Fielder on this specific point; his deposition testimony is simply that he relayed the findings of his investigation to the responding officer. (Fielder Dep. 40–44.)

under oath, but asked him at the end of his account if everything he said was true and accurate to the best of his knowledge. This was consistent with Merrillville Police Department procedures.

On May 5, Detective Gurgevich completed a Probable Cause Affidavit. The Affidavit included information about the two checks the Plaintiff brought to the Bank on May 2, as well as the fraudulent check she deposited in April. The Affidavit erroneously indicated that the Plaintiff deposited the checks into her account on May 2. However, the Information, filed on this same date, indicates that the Plaintiff attempted to commit fraud on May 2 and 3 in violated of Indiana Code § 35-43-5-8.

On August 23, 2005, the State of Indiana moved to dismiss the bank fraud charges against the Plaintiff.

**DISCUSSION**

The only claim in the Plaintiff's Complaint that is premised on federal law is the claim that Detective Gurgevich in his official capacity and the Town of Merrillville violated "her constitutional rights under color of law." (Pl. Compl. ¶ 45.) The Complaint does not identify the specific constitutional right that these Defendants violated. However, in response to the Defendants' Motion for Summary Judgment, she asserts that she "can establish relief under 42 U.S.C. § 1983 by violating [sic] Ms. Freeland's constitutional rights by arresting her when there was no probable cause." (Pl. Resp. ¶ 4, DE 32.) That the Plaintiff intended this as the only federal claim, and the other claims as state law claims, is supported by the structure of the Complaint, which separates the § 1983 claims from all other claims, and from the Plaintiff's brief, which cites to Indiana law in support of the remaining claims.

The Court will analyze the federal claim before it turns to any of the state law claims that are before this Court pursuant to its supplemental jurisdiction.

**A.      Section 1983 Claim for False Arrest & Imprisonment**

A person who has a cause of action based upon § 1983 may sue a "person," who, acting under the color of state statute, custom, or policy, violates her constitutional rights. 42 U.S.C. § 1983. Local governments are considered "persons" for purposes of § 1983. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691(1978). The Plaintiff lodges a § 1983 claim against both Detective Gurgevich in his official capacity as a Merrillville Police Officer, and against the Town of Merrillville. She is attempting to assert a single claim two different ways; in effect, an official capacity suit is not a suit against the government official individually, but rather against the local government entity. *Kentucky v. Graham*, 473 U.S. 159, 166–67 & n.14 (1985) (explaining that official capacity suits "generally represent only another way of pleading an action against an entity of which the officer is an agent"). The Plaintiff has not made any express statements that Detective Gurgevich is being sued in his individual capacity, either in the Complaint or otherwise. Consistent with this, the parties have treated the suit as one against Detective Gurgevich in his official capacity. Therefore, to present her federal claim to a jury, the Plaintiff must establish the elements necessary for § 1983 municipal liability.

To establish liability against the Town of Merrillville, the Plaintiff must prove that: (1) she suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of her injury. *Ienco v. City of Chi.*, 286 F.3d 994,

998 (7th Cir. 2002) (citing *Monell,* 436 U.S. at 690–91). Local government units are answerable under § 1983 only for their own decisions and policies. They cannot be held vicariously liable for the constitutional torts of others, including their employees. *Monell*, 436 U.S. at 694. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

Given these principles, the question before the Court is twofold: did the Plaintiff suffer a deprivation of a constitutional right; and, if so, was it proximately caused by an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City? Because the Plaintiff does not present facts that would allow a jury to find for the Plaintiff on either of these questions, the Court must enter summary judgment in favor of the Town of Merrillville and Detective Gurgevich on the Plaintiff's § 1983 claim.

1.      ***Deprivation of a Constitutional Right***

In arrest and seizure cases, the Fourth Amendment is implicated. The Fourth Amendment protects against "unreasonable seizures." U.S. Const. amend. IV (protecting the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures"). Because an arrest supported by probable cause satisfies the Fourth Amendment, *United States v. Watson*, 423 U.S. 411 (1976), the existence of probable cause constitutes an absolute bar to a § 1983 claim for false arrest, *Potts v. City of Lafayette, Ind.*, 121 F.3d 1106, 1113 (7th Cir. 1997).

An officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *United States v. Mounts*, 248 F.3d 712 (7th Cir. 2001). Probable cause does not require evidence sufficient to support a conviction; it does not even require evidence demonstrating that it is more likely than not that the suspect committed a crime. *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000). "So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *Id.*

The Plaintiff was arrested for fraud on a financial institution, defined in Indiana Code § 35-43-5-8 as follows:

> A person who knowingly executes, or attempts to execute, a scheme or artifice:
> (1) to defraud a state or federally chartered or federally insured financial institution; or
> (2) to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises;
> commits a Class C felony.

Ind. Code § 35-43-5-8. Additionally, a person attempts to commit a crime when "acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1. "A 'substantial step' toward the commission of a crime, for purposes of the crime of attempt, is any overt act beyond mere preparation and in furtherance of intent to commit an offense." *Asghar v. State*, 698 N.E.2d 879, 883 (Ind. Ct. App. 1998) (citing *Williams v. State*, 685 N.E.2d 730, 734 (Ind. Ct. App. 1997)). The focus is on what acts have been completed, not what remains to be done. *Jackson v.*

*State*, 683 N.E.2d 560, 566 (Ind. 1997). However, the completed acts must be strongly corroborative of the firmness of the defendant's criminal intent. *Mitchem v. State*, 685 N.E.2d 671, 676 (Ind. 1997). When facts sufficient to create probable cause are undisputed, probable cause is a question of law. *Potts v. City of Lafayette, Ind.*, 121 F.3d 1106, 1112 (7th Cir. 1997).

To support a claim that her arrest violated the constitution, the Plaintiff must present evidence that would allow a jury to conclude that the arresting officers unreasonably believed that the Plaintiff attempted to execute a scheme to defraud the Bank or to obtain money from the Bank by false or fraudulent pretenses. The Plaintiff does not have first-hand knowledge of the substance of the discussions Fielder had with the police. (Pl. Dep. 82.) Therefore, she must rely on the transcript of his telephone call, the police report prepared by the responding officer, and Fielder's testimony to determine what information the police had when they arrested her. It is undisputed that the police were told that the Plaintiff came to the bank with two large checks, that she was the payee on the checks, and that the bank manager had verified that the checks were fraudulent or counterfeit. The Plaintiff argues that there is an innocent explanation for this—that she did not know that the checks were fake and she was only seeking verification of their authenticity when she brought them to the bank. As proof that the police should have known that she was not trying to defraud the bank with the bad checks, she points to the fact that she never attempted to deposit the checks and that she went directly to Fielder to explain her situation and have him verify the status of the checks. However, the information Fielder presented to the police during his initial telephone call was that he believed she intended to deposit the checks when she came to the bank. The police report states that she deposited the checks, but the bank had not yet processed them.

13

It is not necessary to determine exactly what the police were told regarding the Plaintiff's intent to deposit the checks because even absent clear evidence of her intent to deposit the checks, the information known to the officers on May 3, 2005, reasonably supported the inference that the Plaintiff intended to and took substantial steps toward engaging in a scheme to deposit counterfeit checks. The police were aware that she came to the bank shortly before closing on May 2 with two checks totaling more than $142,000. The manager of the bank provided the police with the original checks and with the information he learned from the issuing banks and companies during his verification process. This included that fact that the amount on one of the checks issued to the Plaintiff was altered from $$556.56 to $100,200. It was reasonable to conclude that the Plaintiff had to take overt acts, beyond mere preparation: (1) to come into possession of the fraudulent checks; and (2) to bring them to a bank. This is true regardless of whether her actions inside the bank were to deposit the checks or to seek verification of the checks. The police could reasonably conclude that, by seeking verification from Fielder, the Plaintiff did so with the intent to deposit checks that she knew were counterfeit. Seeking approval was a necessary step for deposit. Therefore, rather than being proof that she did not intend to deposit the checks with knowledge that they were counterfeit, it could reasonably be construed as an additional overt act in furtherance of her intent to commit fraud. While this evidence is not conclusive of the Plaintiff's intent to commit fraud, an issue that would be for a jury, it was sufficient when viewed in a "common sense manner" to reveal a "probability or substantial chance of criminal activity" on the Plaintiff's part. *Sawyer*, 224 F.3d at 679. Although the Plaintiff's intent in going to the bank with the counterfeit checks was not certain, "probable cause does not require certainties." *Id.* at 680. For this Court to conclude that

14

officers did not have sufficient basis to believe that the Plaintiff intended to commit fraud because she first sought to verify the fraudulent checks would impose "too technical and too stringent a probable cause standard." *Id.* (holding that officer had probable cause to arrest person if he reasonably believed there was a substantial chance that the object arrestee dropped was a firearm).

Without a predicate constitutional violation, the Plaintiff cannot make out a prima facie case under § 1983. Even if the Court assumes that the arresting officers did not have sufficient probable cause to arrest her on May 3, 2005, there is an alternative basis for granting summary judgment. The Plaintiff has not established that the Town of Merrillville is liable for any constitutionally deficient arrest perpetuated by individual police officers.

## 2. *Municipal Policy or Custom*

The Plaintiff provides a wholly inadequate response to the Defendants' argument that she has not identified any policy or custom of the Town of Merrillville that resulted in a violation of her constitutional rights. The Plaintiff argues that she has identified various policies of the Merrillville Police Department that "allow the Defendants to violate individuals constitutional rights. These polices include not requiring individuals to give sworn statements before accusing individuals with a crime," "not provid[ing] formal training to its officers in investigating check fraud cases," and failing to "review specific problems with the officers during [performance] evaluations." (Pl. Resp. 13; DE 33.) She then concludes her discussion on this essential element by stating that she "has designated evidence to establish that the policies of the Defendants are what leads to the violations of constitutional rights," specifically false arrest. (Pl. Resp. 13.)

The Plaintiff's argument is not sufficient to defeat summary judgment because she makes no attempt to establish that these policies were the "moving force" behind the alleged constitutional deprivation. *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002) (explaining the causation that is necessary to hold a municipality liable for a constitutional injury) (citing *Monell*, 436 U.S. at 691–94)). The Plaintiff has not shown that the policies she identifies are unconstitutional policies that explicitly violate a constitutional right when enforced and, thereby, create liability. *Cf. Monell*, 436 U.S. at 694–95 (holding that a municipality may be liable under § 1983 for a policy that required pregnant women to take unpaid leave before leave was required for medical reasons because the policy itself is unconstitutional); *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (stating that a policy that directed sheriff's personnel to throw away all prescription medications brought in by detainees without reading the label or making alternative provisions for the affected individuals would be an example of a policy that violated the Eighth Amendment when enforced). Neither has she shown that the complained-of omissions in the policies (not requiring witnesses to give statements under oath) resulted in a pattern of constitutional violations. *See Calhoun*, 408 F.3d at 380–81 (explaining that in cases attacking gaps in express policies, "what is needed is evidence that there is a true municipal policy at issue, not a random event"). Drawing on Supreme Court precedent, the court in *Calhoun* explained that when the policy itself is not unconstitutional, "considerably more proof than a single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the [omission in the policy] and the constitutional deprivation." 408 F.3d at 380 (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (plurality opinion)) (bracket in original)). Further, when a plaintiff claims that lack of

adequate training caused the constitutional deprivation, she must establish that the need for enhanced training was so likely to result in the violation of constitutional rights that a jury could reasonably attribute to the policymakers a deliberate indifference to those training needs. *City of Canton v. Harris*, 489 U.S. 378, 389–92 (1989); *Tapia v. City of Greenwood*, 965 F.2d 336, 339 (7th Cir. 1992).

Here, the Plaintiff presents no evidence of the impact of the identified policies outside of her own arrest. The Plaintiff has submitted no evidence of additional incidents of allegedly unconstitutional actions stemming from the police department's procedures for obtaining witness statements or for evaluating its employees. She has not designated any evidence to demonstrate that the Town was on notice of a pattern of constitutional violations resulting from inadequate training of police to investigate fraud crimes and, thus, no evidence that the Town was deliberately indifferent to the violations. There is simply no evidence of a custom or policy of the Defendants of arresting people without probable cause. Because proof of a direct causal link between an action of the municipality and the Plaintiff's harm is an essential element of the her claim against the Town of Merrillville and against Detective Gurgevich in his official capacity, for which the Plaintiff has failed to designate evidence, the Defendants are entitled to judgment as a matter of law.

**B.      State Law Claims**

Having determined that the § 1983 claim does not survive summary judgment, the Court turns to the question of whether it should exercise supplemental jurisdiction over the remaining claims in this case, all of which arise under Indiana law. The basis of the Court's jurisdiction

over the state law claims lies in it supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (extending federal district court's jurisdiction to all claims that are so related to a claim within the court's original jurisdiction that they form part of the same case or controversy within the meaning of Article III of the Constitution).

Although § 1367(a) authorizes federal courts to exercise supplemental jurisdiction over state law claims, it does not require the court to do so in all cases. District courts can decline to exercise jurisdiction over supplemental state law claims for a number of reasons, which are specifically enumerated in § 1367. Relevant here, subsection (c)(3) states that a court can decline to exercise supplemental jurisdiction when the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The statute . . . reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi, v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

"[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associates Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). The Seventh Circuit has identified three situations where a court should retain jurisdiction over supplemental claims even though the federal claims have dropped out: where the statute of limitations would bar the refiling of the supplemental claims in state court; where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided. *Williams v. Eletronics Games, Inc. v. Garrity*, 479

18

F.3d 904, 906–07 (7th Cir. 2007) (citing *Wright*, 29 F.3d at 1251–52).

With the dismissal of the § 1983 claim against Detective Gurgevich and the Town or Merrillville, the Court declines to exercise supplemental jurisdiction over the majority of the remaining claims. The claims against Fielder and the Bank for slander, false arrest and imprisonment, malicious prosecution, and tortious interference with a business or contractual relationship find their basis in Indiana common law. The primary defense that these Defendants advance in their Motion for Summary Judgment is a qualified privilege recognized by Indiana courts as being applicable to certain communications. Although the parties have briefed the merits of these claims and this defense, the Court has not spent judicial resources on resolving them. It is not obvious how the claims should be decided absent a thorough analysis of state law. The arguments the parties have made to this Court would not change in substance if made to a state court, which is the forum most qualified to resolve matters of state law. A remand of the state claims would not present any statute of limitations issues. Therefore, the Court declines to exercise supplemental jurisdiction over the state law claims and declines to rule on the summary judgment motions pending on these claims.

The one exception to this conclusion is the state law claims against the Town of Merrillville and Detective Gurgevich for false arrest and false imprisonment. Under Indiana law, a defendant may be liable for false arrest when he arrests a plaintiff in the absence of probable cause. *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002); *see also Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007) (stating that a "false arrest requires absence of probable cause"). "False imprisonment is the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Miller*, 777 N.E.2d at 1104. Because the Plaintiff's

false imprisonment claim is derived from the alleged false arrest, the analysis for the two torts is the same. *Row*, 864 N.E.2d at 1016 n.4.

If a plaintiff in a false arrest action fails to demonstrate the absence of probable cause, or if the record as a whole reflects probable cause for the arrest, the plaintiff's case fails. *Conwell v. Beatty*, 667 N.E.2d 768, 775 (Ind. Ct. App. 1996) (citing *Garrett v. City of Bloomington*, 478 N.E.2d 89, 93 (Ind. Ct. App. 1985)). Probable cause for arrest is demonstrated, as it is under federal law, where facts and circumstances known to the arresting officer would warrant a person of reasonable caution and prudence to believe that the accused had committed or was committing a criminal offense. *Miller*, 777 N.E.2d at 1104. This Court has already expended substantial judicial resources to determine that the Merrillville Police had probable cause to arrest the Plaintiff for attempted fraud on a financial institution. Therefore, the Court retains supplemental jurisdiction over the state law claim against Detective Gurgevich and the Town of Merrillville for false arrest and imprisonment to enter summary judgment in favor of these Defendants. Because the Court's analysis of probable cause relates specifically to the municipality's actions and the reasonableness of its belief, the Court declines to rule on the Bank Defendant's motion for summary judgment on the Plaintiff's false arrest and imprisonment claim.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Town of Merrillville and Detective Gurgevich [DE 22] is GRANTED in PART. The Clerk is directed to enter summary judgment in favor of Defendants Gugevich and the Town of Merrillville and against Plaintiff Patricia Freeland on the Plaintiff's federal claims under § 1983 and her state law

claims for false arrest and imprisonment. The Court declines to rule on the Motion for Summary

Judgment [DE 28] filed by Fielder and Mercantile Bank and on the remainder of the Motion for

Summary Judgment [DE 22] filed by Gurgevich and the Town of Merrillville as the remaining

claims are REMANDED to the Lake Superior Court.

SO ORDERED on September 23, 2008.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION